# United States Court of Appeals

## For the First Circuit

Nos. 10-2047; 11-1021

STEPHEN F. FRYER,

Plaintiff, Appellee,

v.

A.S.A.P. FIRE & SAFETY CORPORATION, INC.;
JOSEPH SHEEDY; BRIAN COTE,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Marianne B. Bowler, U.S. Magistrate Judge]

Before

Boudin, Selya, and Dyk,[*]
Circuit Judges.

Lester E. Riordan III, for appellant.
Jon Meyer, with whom Nancy Richards-Stower was on brief for
appellee.

September 9, 2011

---

[*]    Of the Federal Circuit, sitting by designation.

**DYK**, **Circuit Judge**.  A.S.A.P. Fire & Safety Corporation and its owners Joseph Sheedy and Brian Cote (collectively "A.S.A.P."), appeal from a district court judgment.  Fryer v. A.S.A.P. Fire & Safety Corp., No. 1:09-CV-10178 (D. Mass. Jan. 25, 2010) (Final Judgment).  The district court awarded damages against A.S.A.P. for violating the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4311 et seq. (hereinafter "USERRA"); Massachusetts anti-discrimination law, Mass. Gen. Laws ch. 151B, § 4(1)(D)(2004); and the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148 (2004).  Fryer v. A.S.A.P. Fire & Safety Corp., No. 1:09-CV-10178 (D. Mass. January 25, 2010) (Final Judgment).  The court also awarded attorneys' fees.  On appeal, A.S.A.P. argues that Fryer's claims under chapter 151B were preempted by USERRA; that the jury determination of willfulness was unsupported; and that the damages and attorneys' fees awards were excessive.  We affirm.

**I.**

Fryer was employed by A.S.A.P. as a sprinkler service / sales representative beginning in January 2006.  In addition to hourly compensation, Fryer received a ten percent commission on sales he made to new accounts.

Fryer had previously served in the Marines in both active duty and the reserves.  In January 2007, he re-enlisted in the National Guard.  About a month later, Fryer received a letter from

the National Guard notifying him that he would be deployed to Iraq in May 2007. Fryer informed A.S.A.P. of his deployment orders, and he reported for active duty on May 1, 2007. During his deployment, Fryer notified A.S.A.P. that he expected to return to the United States by the end of May 2008 and expected to resume employment with A.S.A.P. at that time.

USERRA prohibits employers from denying members of the armed services "reemployment, [or] retention in employment . . . on the basis of [the employee's military service]," 38 U.S.C. §4311(a), and it grants members of the armed services a right to "reemployment" following an absence "necessitated by reason of [military] service," id. § 4312(a). Thus, A.S.A.P. had an obligation to reinstate Fryer upon his return from deployment. See 20 C.F.R. § 1002.139(a); see also, Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 930 (8th Cir. 2007) (holding that USERRA is violated where a member of the armed services is "not reemployed in the position she would have been in had she not taken military leave or a position of like seniority, status and pay") (internal quotation marks omitted).

Where an employer violates USERRA, "[t]he court may," among other things, "require the employer to compensate the person for any loss of wages or benefits suffered by reason of [the] employer's failure to comply with the provision[]." 38 U.S.C. § 4323(d)(1)(B). Additionally, "[t]he court may require the

-3-

employer to pay the person an amount equal to that [awarded for loss of wages or benefits] as liquidated damages, if the court determines that the employer's failure to comply . . . was willful." Id. § 4323(d)(1)(C).  In other words, where the court finds that the employer's conduct was willful, the damages for loss of wages or other benefits may be doubled.  Additionally, an employee who prevails in an action under USERRA may be awarded "reasonable attorney fees, expert witness fees, and other litigation expenses."  38 U.S.C. § 4323(h).

When Fryer arrived home from military duty, he informed A.S.A.P. that he was available to start work on May 12, 2008.  In response, A.S.A.P. told Fryer that, during his deployment, another individual had been hired to fill his position and that there were no positions currently available at A.S.A.P.  On May 22, 2008, Fryer sent a letter to A.S.A.P. formally requesting reinstatement to his pre-service position and informing A.S.A.P. that he intended to report to work on June 30, 2008.  When Fryer met with A.S.A.P. on June 30th, he was told that his pre-service position was unavailable.  Instead, A.S.A.P. offered Fryer a position as a sprinkler helper.  Although Fryer was offered a three dollar per hour increase in pay, sprinkler helpers have a much more limited opportunity to earn commissions.  Commissions had previously been a substantial portion of Fryer's income.  Additionally, sprinkler helpers do not have access to a company van or cell phone, both of

-4-

which were made available to Fryer in his pre-service position as a sprinkler service / sales representative. Fryer accepted the position but repeatedly voiced his desire to return to his pre-service position. Fryer continued in service with A.S.A.P. as a sprinkler helper until he was terminated on October 22, 2008, allegedly on grounds of absenteeism during the period of reemployment.

Following his termination, Fryer sued A.S.A.P. alleging, among other things, violations of USERRA, 38 U.S.C. §§ 4311 et seq.; Massachusetts anti-discrimination law, Mass. Gen. Laws ch. 151B, § 4(1)(D)(2004); and the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148 (2004). Fryer alleged that A.S.A.P. violated USERRA and state anti-discrimination law by (1) failing to reemploy him in his pre-service position, (2) discriminating and retaliating against him because of his military service, and (3) terminating him because of his military service. Fryer presented evidence that he had trouble finding work following his termination from A.S.A.P. and that he suffered emotional distress as a result of his treatment. Additionally, Fryer sought recovery of sales commissions[1] and overtime wages under the Massachusetts Wage Act.

---

[1] Fryer sought recovery of unpaid sales commissions in the amount of $610 earned prior to deployment (i.e., pre-deployment commissions) and $4,650 earned during reemployment. Fryer alleges that, during the reemployment period, he brought in $46,500 worth of new business, which entitled him to a 10% commission on the sale from a new account.

By the consent of the parties, a magistrate judge presided over the jury trial.  See 28 U.S.C. § 636(c).  The jury awarded Fryer $42,234 in back pay under USERRA.  The jury also awarded Fryer $105,000 in front pay (i.e., future wages) and $289,000 in emotional distress damages under Massachusetts anti-discrimination law, as well as $5,260 as compensation for earned commissions[2] and $4,240 for lost overtime under the Massachusetts Wage Act.

Because the jury found that A.S.A.P. had acted willfully, the district court doubled the back-pay award under USERRA. Additionally, the award for commissions earned during the reemployment period was trebled pursuant to the Massachusetts Wage Act, Mass. Gen. Law ch. 149, § 150,[3] and the award for lost overtime was trebled pursuant to Massachusetts anti-discrimination law, Mass. Gen. Law ch. 151, § 1B,[4] resulting in a total award of $14,560 for earned commissions and $12,720 for lost overtime.

Following the jury verdict, the district court entered final judgment in the amount of $505,748 plus prejudgment interest of $33,532.99.  Post-judgment interest was awarded at the rate of

---

[2] Of the $5,260 awarded as compensation for earned commissions, $610 was awarded for commissions earned prior to Fryer's deployment and $4,560 was awarded for commissions earned during the reemployment period.

[3] Section 150 states that the prevailing employee "shall be awarded treble damages, as liquidated damages, for any lost wages or other benefits."  Mass. Gen. Law ch. 149, § 150.

[4] Section 1B similarly states that the prevailing employee "shall be awarded treble damages, as liquidated damages, for lost overtime compensation."  Mass Gen. Law ch. 151, § 1B.

0.41 percent.  The court later awarded Fryer attorneys' fees in the amount of $199,204.28 plus post-judgment interest at the rate of 0.31 percent.

A.S.A.P. timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.  On appeal, A.S.A.P. challenges the denial of its new trial motion, the denial of its request for remittitur, and the award of attorneys' fees.  We review the denial of a motion for new trial or a remittitur for an abuse of discretion.  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 13-14 (1st Cir. 2009).  We review fee awards "only for mistake of law or abuse of discretion."  Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992).

## II.

While A.S.A.P. does not challenge the district court's determination that it violated USERRA, A.S.A.P. argues that Fryer's claims under state anti-discrimination law are barred because they are preempted by USERRA.  Specifically, A.S.A.P. contends that the state law claims are preempted because the same conduct serves as the basis for both the federal liquidated damages and the state compensatory damages awards, thereby creating a duplicative award, which A.S.A.P. argues is contrary to the purpose of USERRA.  Fryer argues that there is no preemption of state law because USERRA specifically preserves state claims, providing:

> Nothing in this chapter shall supersede, nullify or diminish any Federal or State law . . . that establishes a right or benefit

-7-

> that is more beneficial to, or is in addition to, a right or benefit provided for such person [by USERRA].

38 U.S.C. § 4302.

As a threshold matter, Fryer argues that we should not address the merits of the preemption question because A.S.A.P. did not raise the issue of preemption below and has accordingly waived the argument. A.S.A.P. "acknowledges that its counsel did not formally raise preemption in the trial court as an affirmative defense," but contends that USERRA is jurisdictional in nature and that preemption is therefore a non-waivable defense.

Whether the defense of preemption is jurisdictional or waivable is a question of law we review de novo. Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 446-47 (1st Cir. 1995). The Supreme Court has recognized that the defense of preemption can be jurisdictional, and therefore non-waivable, if success on the preemption defense would dictate the choice of forum and thereby deprive the reviewing court of subject matter jurisdiction. See Int'l Longshoremen's Assoc. v. Davis, 476 U.S. 380, 390-91 (1986). In contrast, the defense of preemption is waivable where it merely dictates a different choice of law. Id. In Davis, the Supreme Court held that a preemption defense under the National Labor Relations Act, 29 U.S.A. § 151 et seq., is jurisdictional because successful assertion of the defense would cause the state court's jurisdiction to "itself [be] preempted by federal law vesting

-8-

exclusive jurisdiction over that controversy in another body [i.e.,
the National Labor Relations Board]." Id. at 388 (emphases added).
In contrast, this court has held that a preemption defense under
the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), is
not jurisdictional because the state courts maintain concurrent
jurisdiction over claims under the Act. Sweeney v. Westvaco Co.,
926 F.2d 29, 39 (1st Cir. 1991). Because a successful preemption
defense under the LMRA would dictate a change in the choice of law,
but not a change in forum, the preemption defense is not
jurisdictional and can be waived. Id. at 41.[5]

Here, the preemption defense is not jurisdictional
because a successful preemption defense under USERRA would dictate
only a change in law, not a change in forum. This is not a
situation, as in Davis, where the state courts have claimed
jurisdiction over a matter that is within the exclusive
jurisdiction of a federal agency or other federal forum. Nor is it
a situation where federal courts enforcing a state law have
interfered with the exclusive jurisdiction of a federal agency or
other federal forum. As the preemption defense under USERRA is not
jurisdictional, and, because A.S.A.P. failed to raise the issue of

_____

[5]    See also Wolf, 71 F.3d at 448 (holding that a
preemption defense under the Employee Retirement Income Security
Act ("ERISA"), 29 U.S.C. § 1144(a), was waivable because "ERISA's
jurisdictional provision provides that 'State courts . . . and
district courts of the United States shall have concurrent
jurisdiction of actions . . . brought by a participant or
beneficiary to recover benefits due'").

-9-

preemption before the district court, its preemption claim has been waived.[6]

## III.

USERRA permits the award of liquidated damages "if the court determines that the employer's failure to comply with [USERRA] was willful." 38 U.S.C. § 4323(d)(1)(C). When a statute does not define the term "willful," the Supreme Court has instructed us to look to the standard applied in other statutes employing similar language. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125-26 (1985).

In a series of decisions beginning in 1985, the Supreme Court has repeatedly held that, "where willfulness is a statutory condition of civil liability, . . . [the term] cover[s] not only knowing violations of a standard, but reckless ones as well." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007); see also Hazen Paper Co. v. Biggins, 507 U.S. 604, 614 (1993); McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); Thurston, 469 U.S. at 125-30.

In Thurston, the Supreme Court adopted a "reckless disregard" standard for willful violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34 (1988), which provides that liquidated damages are "payable only in

_____

[6] Relying on Sweeney, A.S.A.P. argues that even if its preemption claim has been waived, we nonetheless have the discretion to consider the issue. We need not determine whether we have such discretion because, even if we did, we would decline to reach the merits of A.S.A.P.'s preemption claim.

-10-

cases of willful violations," 29 U.S.C. § 626(b).  See 469 U.S. at 126.

A few years after Thurston, the Supreme Court adopted a "reckless disregard" standard for willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 255(a), which extended the limitations period for claims "arising out of a willful violation." McLaughlin, 486 U.S. at 133 (citing Thurston, 469 U.S. at 128).  And in Hazen Paper, the Supreme Court revisited the willfulness standard under the ADEA and reaffirmed Thurston, holding that a violation of the ADEA is willful "if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA."  507 U.S. at 614 (internal quotation marks omitted).

In Safeco, the Supreme Court also adopted a "reckless disregard" standard for willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681n(a), which permits the recovery of liquidated damages from "[a]ny person who willfully fails to comply with [the FCRA]."  551 U.S. at 57 (citing McLaughlin, 486 U.S. at 132-33; Thurston, 469 U.S. at 125-26).  The Court noted that "[t]he standard civil usage" of the term willful supported the adoption of a standard which equated willful violations with actions taken in "reckless disregard" of the statute.  Safeco, 551 U.S. at 57.

Thus, in the context of the ADEA, the FLSA, and the FCRA, the Supreme Court has held that an employer's violation is willful

-11-

if the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the statute. Safeco, 551 U.S. at 57-58; Hazen Paper, 507 U.S. at 614; McLaughlin, 486 U.S. at 133. We note also that the Sixth Circuit, in an unpublished decision, has similarly held that, for claims under USERRA, a violation of the statute is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." Koehler v. PepsiAmericas, Inc., 268 Fed. Appx. 396, 403 (6th Cir. 2008) (citing Thurston, 469 U.S. at 125-30).

Following the Supreme Court's direction that the term "willfulness" generally imports a reckless disregard standard, we hold that the term "willful" as used in § 4323(d)(1)(C) of USERRA refers to a knowing violation or action taken in reckless disregard of the obligations imposed by USERRA. Under this standard, "[a] finding of willfulness requires something more than merely showing that an employer knew about the [statute] and its potential applicability in the workplace." Sanchez v. P.R. Oil Co., 37 F.3d 712, 721 (1st Cir. 1994)(applying the same standard to claims under the ADEA). Where an employer engaged in "reasonable, good-faith efforts to determine that [its actions] complied with the [statute]," a finding of willfulness is inappropriate even though the employer's actions in fact violated the statute. Id. (citing Thurston, 469 U.S. at 127-28). Instead, it must be shown that the employer acted with "reckless disregard of, or deliberate

-12-

indifference to, [the] employer's [statutory] obligations." Sanchez, 37 F.3d at 721-22.

We consider separately the issue of willfulness in relation to A.S.A.P.'s refusal to reinstate Fryer and its decision to terminate him. There is ample evidence to permit a reasonable jury to conclude that A.S.A.P. acted willfully in refusing to reinstate Fryer in his pre-service position. First, the jury could have concluded that A.S.A.P. knew that it had an obligation to reinstate Fryer. One of A.S.A.P.'s owners testified that the Department of Labor informed A.S.A.P. of its "obligation to rehire Mr. Fryer" so that he could "pick up where he left off." J.A. 882-83. Second, A.S.A.P.'s actions strongly support a conclusion that A.S.A.P. was deliberately indifferent regarding its obligations under USERRA. Fryer testified that when he expressed dissatisfaction that A.S.A.P. had not reinstated him in his pre-service position, he was told by Joseph Sheedy, one of A.S.A.P.'s owners, that he "needed to prove [him]self" because Fryer had "left [A.S.A.P.] in a lurch" when he deployed and that the company "had suffered [because of] it." J.A. 577-78. Fryer also testified that he received "an extremely angry phone call" from Brian Cote, one of A.S.A.P.'s owners, in which Fryer was told that he "needed to shut [his] mouth" regarding his requests for reinstatement to his pre-service position because another employee "was in the job" and he was not going to move that employee out of the position. J.A. 628. Fryer responded to Cote by informing him that he did, in fact,

-13-

expect to return to his pre-service position, to which Cote responded: "That's not going to fucking happen." J.A. 628-29. In sum, A.S.A.P.'s admission that it was aware of its obligation to reinstate Fryer, coupled with Fryer's testimony regarding his interactions with A.S.A.P.'s owners, is certainly sufficient to permit a reasonable jury to conclude that A.S.A.P. knew of its obligations and acted with reckless disregard in refusing to reinstate Fryer to his pre-service position.

With respect to A.S.A.P.'s action in discharging Fryer, A.S.A.P. argues that its conduct was not willful because it "independently possessed reasons to discharge Fryer for cause." Appellant's Br. 22. If A.S.A.P. had discharged Fryer for cause, this could negate a finding that A.S.A.P.'s decision to terminate Fryer was based on his military service. Vega-Colon v. Wyeth Pharms., 625 F.3d 22, 27 (1st Cir. 2010) (noting that the employer may overcome a prima facie case of violation if it can demonstrate "that the action would have been taken despite the [employee's] protected status"). A.S.A.P. appears to argue that a good faith belief that it was permissible to discharge an employee for absenteeism would also negate a finding of willfulness as to the discharge. Here, the jury concluded specifically that Fryer was not discharged for cause. Additionally, there was ample evidence that A.S.A.P.'s claim of excessive absenteeism was merely pretextual.

A.S.A.P. curiously argues that it also could have discharged Fryer for complaining about A.S.A.P.'s failure to comply with its USERRA obligations. Asserting rights under USERRA cannot, of course, provide grounds for discharge. See 38 U.S.C. § 4311(b) (prohibiting an employer from "tak[ing] any adverse employment action against any person because such person . . . has taken an action to enforce a protection afforded [under USERRA]"). In sum, just as the evidence supported Fryer's claim that the failure to reinstate him was willful, the evidence also supports the jury's verdict that A.S.A.P.'s action in discharging Fryer was willful.

**IV.**

A.S.A.P. argues that the district court made several other errors, including errors in the calculation of damages and the award of attorneys' fees. Most of these claims are meritless, and some border on frivolous. We think it necessary only to address three. First, A.S.A.P. argues that Fryer should not have been compensated for the period prior to June 30, 2008, the reinstatement date requested in Fryer's formal written request for reinstatement. The jury heard evidence that Fryer orally requested an earlier reinstatement date of May 12, 2008. This evidence permitted the jury to conclude that A.S.A.P.'s failure to reinstate Fryer on May 12, 2008, resulted in an unlawfully delayed start date and thus entitled him to back-pay.

Second, Fryer was awarded back-pay based on an average weekly pay calculation for the period during which Fryer was

-15-

employed as a sprinkler service / sales representative. A.S.A.P. argues that, in calculating Fryer's average weekly pay, Fryer's expert improperly limited the calculation to 2006 and excluded the first four months of 2007, in which Fryer's commissions were lowest. Fryer's expert testified that he used 2006 as the base year for calculating back-pay because it was nearly a full year and included "seasonal variations." J.A. 693. The expert noted that he was not provided data on a week-by-week basis, which prevented him from simply using "[Fryer's] last 52 weeks of employment," including the first four months of 2007. J.A. 692. The expert also explained that Fryer's average weekly wage for 2007, in which Fryer worked only four months before his deployment, was less than in 2006. J.A. 706. The expert noted that, although Fryer's weekly earnings were higher some weeks than others, he expected that "it would average out" over the course of a year. J.A. 693. Thus, given the fluctuating nature of Fryer's earnings over a one-year period, the jury could reasonably have concluded that, despite lower weekly earnings during the first four months of 2007, Fryer's average weekly earnings during the period in question would have been essentially equivalent to the 2006 weekly average.

Finally, A.S.A.P. argues that the back-pay award should be adjusted to account for commission and overtime compensation which was separately awarded. The jury instructions specifically directed the jurors not to award duplicate amounts. See J.A. 1034, 1036-37. Absent some indication to the contrary, the jury is

presumed to have followed the court's instructions. <u>United States</u> v. <u>Gonzalez-Vazquez</u>, 219 F.3d 37, 48 (1st Cir. 2000). Here, there is no indication that the jury failed to follow the court's instructions regarding duplicate awards.

As the district court correctly noted, "the back-pay award of $42,234 . . . is far from excessive and the record provides ample support for the amount." <u>Fryer</u> v. <u>A.S.A.P. Fire & Safety Corp.</u>, No. 1:09-CV-10178 (D. Mass. Jan. 25, 2010) (Denial of A.S.A.P.'s motion for new trial).

<u>Affirmed.</u>

Costs to appellee.