UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Henry L. Farrin, Jr.

    v.

Nationstar Mortgage LLC

Civil No. 15-cv-102-LM
Opinion No. 2016 DNH 178

**O R D E R**

Henry Farrin brings suit alleging that Nationstar Mortgage LLC ("Nationstar") violated New Hampshire's Unfair, Deceptive, or Unreasonable Collection Practices Act (RSA 358-C); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e. Farrin alleges that, while serving in Afghanistan, Nationstar sent him several letters and left him numerous voicemails in an effort to collect on his mortgage debt, which had been discharged in bankruptcy. Farrin also alleges that the efforts to collect his discharged mortgage debt continued even after he returned from Afghanistan, and that Nationstar unlawfully accessed his credit report. Nationstar moves for summary judgment on all claims. Farrin objects to the motion on the grounds that material factual disputes preclude summary judgment.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). The court credits the evidence that supports the non-moving party and draws all reasonable inferences in his favor. Burns v. Johnson, 829 F.3d 1, 8 (1st Cir. 2016). Therefore, in reviewing a motion for summary judgment, the court's function is not "'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

## Background

On October 16, 2007, Henry Farrin obtained a loan of $229,900 and signed a note with Taylor, Ben & Whitaker Mortgage Co. as lender that was secured by a mortgage on his property in Epsom, New Hampshire. A second lien was recorded on the property in 2008 by Robert and Jerelyn Hill for $143,582.

By 2010, Farrin had experienced personal and financial difficulties and was unable to make the mortgage payments. He unsuccessfully sought a modification of the loan from Ocwen Loan Servicing, LLC. He then vacated the property in March 2010 and surrendered the property to Ocwen in October 2010. Ocwen changed the locks on the house and put a notice in the window.[1] Ocwen did not foreclose on the mortgage.

On February 7, 2012, Farrin filed for bankruptcy under Chapter 7. He received a discharge on June 6, 2012.[2] In December 2012, Ocwen asked Farrin to waive his rights under the

---

[1] Farrin does not provide any explanation of the content of the notice.

[2] The discharge operates to discharge Farrin's personal liability on the note, but does not affect the lender's title interest in the property. The lender retains the right to foreclose on the mortgaged property despite the discharge of the debtor's liability on the note. In re Ladebush, Bk. No. 11-10763-JMD, 2016 WL 675580, at *7 (Bankr. D.N.H. Feb. 18, 2016) (citing Johnson v. Home State Bank, 501 U.S. 78, 83 (1991), and Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991)).
The distinction is that while personal liability for the note is discharged in bankruptcy, the lender may recover the deficiency due on a mortgage loan through an action in rem against the debtor under the mortgage, that is by foreclosure. Summers v. Fin. Freedom Acquisition LLC, 807 F.3d 351, 357 (1st Cir. 2015); In re Canning, 706 F.3d 64, 69 (1st Cir. 2013); Worrall v. Fed. Nat'l Mortg. Ass'n, No. 13-cv-330-JD, 2013 WL 6095119, at *6 (D.N.H. Nov. 20, 2013). The debtor may eliminate the mortgage by surrendering the mortgaged property to the lender. Canning, 706 F.3d at 69-70. The lender is not required to accept the surrender but cannot use the refusal as a subterfuge to coerce full payment of the loan from the debtor. Id.

Servicemembers Civil Relief Act ("SCRA") and to consent to foreclosure.[3]  In response, Farrin offered Ocwen a deed to the property in lieu of a foreclosure.  Ocwen did not accept a deed in lieu of a foreclosure because of the Hills' lien on the property.  Ocwen apparently made no further efforts to resolve the foreclosure issue.

Since 2007, Farrin has served as the supply sergeant for medevac units in the New Hampshire National Guard.  In April 2013, Farrin was deployed to Afghanistan; he returned in January 2014.

On May 16, 2013, while Farrin was in Afghanistan, Nationstar became the servicer on Farrin's mortgage.  Nationstar sent Farrin a letter on May 31, 2013, to inform him of the change in servicers.  Thereafter and until June 2015, Nationstar sent Farrin monthly statements of his mortgage account, which included disclaimers that the statement was not intended as an attempt to collect a discharged debt.  Nationstar also sent

---

[3] The SCRA "provides foreclosure protections to servicemembers." JPMorgan Chase Bank, N.A. v. Healey, No. 12-11922-JCB, 2014 WL 1348033, at *1 (D. Mass. Apr. 2, 2014). "Specifically, the SCRA provides that a 'sale, foreclosure, or seizure of property for a breach of an obligation' conducted while the party is in the military or during a designated period thereafter 'shall not be valid ... except ... (1) upon a court order granted before such sale, foreclosure, or seizure; or (2) if made pursuant to an agreement [between the parties].'" Id. (quoting 50 U.S.C. § 3953(c)).

4

Farrin other correspondence about contact information at Nationstar, insurance on the property, foreclosure options, tax statements, and notices about the SCRA. Some of the notices included disclaimers stating that the notice was an attempt to collect a debt unless the debt had been discharged in bankruptcy and then the notice was for informational purposes only.

In January 2014, when Farrin returned from Afghanistan, he found "tons" of messages on his cell phone from Nationstar that stated the call was an attempt to collect a debt. Nationstar's records show that the calls were for collection purposes. Nationstar made a total of ninety-nine calls to Farrin's cell phone, called his office telephone fifty times, and sent him thirty letters.[4] He told Nationstar to stop contacting him, but the communications continued. Farrin believed that Nationstar was trying to collect the outstanding balance on the loan from him, despite the bankruptcy discharge.

On July 31, 2014, Nationstar obtained Farrin's consumer credit report. Nationstar characterizes its action as a "soft pull" of credit information, which allows it to access certain information, such as Farrin's current and former address and whether he is in the military, but does not become public or

---

[4] Nationstar disputes that the calls were for the purpose of collecting a debt and points to Farrin's deposition testimony about the calls in which Farrin said he could not remember if anyone told him he owed Nationstar money during the calls.

5

negatively impact Farrin's credit.  Nationstar asserts that it obtained Farrin's credit report for "account review purposes."

On March 25, 2015, Farrin brought suit against Nationstar. He alleges that Nationstar's actions, including the telephone calls and written communications, violated RSA 358-C, the FDCPA, and FCRA.

## Discussion

Nationstar moves for summary judgment on all claims.  It asserts that that neither the FDCPA nor RSA 358-C prohibits its communications with Farrin and that a portion of Farrin's FDCPA claim is time barred.  Nationstar further contends that, because it obtained Farrin's credit reports for a permissible purpose, it did not violate FCRA.  Farrin objects on all grounds but does not address the statute of limitations argument.[5]

---

[5] Nationstar complains that Farrin's objection did not comply with the factual statement requirement under Local Rule 56.1 and exceeded the page limit under Local Rule 7.1(a)(3).  While Nationstar is correct that Farrin's objection fails to incorporate a factual statement and his filings exceed the page limit, the court will consider Farrin's filings despite his failure to comply with the local rules.  See LR 1.3(b).  Farrin is put on notice that the local rules, including page limits, apply in this case.

A.  Mays Declaration

Nationstar submitted two declarations from O.E. "Gene" Mays, II, one in support of its motion for summary judgment, see doc. no. 20-2 ("first Mays declaration") and one in support of its reply.  See doc. no. 24-2 ("second Mays declaration"). Farrin contends that the court should disregard both declarations because they are based on "information and belief" and not on personal knowledge.  He also argues that the court should disregard the first Mays declaration for the additional reason that it conflicts with Mays's deposition testimony.

The court considers both declarations in ruling on Nationstar's motion for summary judgment.  Although both declarations conclude with the statement that the declaration is true to the best of Mays's "information and belief," both specifically state that the information in the declarations is based on Mays's personal knowledge.  Therefore, the declarations are acceptable.  See HMC Assets, LLC v. Conley, No. CV 14-10321-MBB, 2016 WL 4443152, at *2 (D. Mass. Aug. 22, 2016); Rios Colon v. United States, 928 F. Supp. 2d 388, 391 (D.P.R. 2012).

Farrin also argues that the first Mays declaration conflicts with his deposition testimony and, therefore, should be disregarded as a "sham."  Specifically, Farrin notes that Mays testified at his deposition that Nationstar pulled Farrin's credit report for "skip tracing" purposes, but stated in his

7

declaration that Nationstar pulled the report for "account review purposes."  Farrin has not explained why Mays's statement in his declaration conflicts with his deposition testimony, rather than "merely explains, or amplifies upon" the testimony. Gillen v. Fallon Ambulance Serv., 283 F.3d 11, 26 (1st Cir. 2002).  Therefore, the court considers both declarations.

## B.  FDCPA

Nationstar first argues that some of its communications to Farrin, those that occurred before March 25, 2014, cannot be considered for purposes of the FDCPA claim because they are barred by the one-year statute of limitations.  See 15 U.S.C § 1692k(d).  Farrin failed to respond to the limitations defense except to say in his surreply that he "did not and does not waive claims for FDCPA violations prior to March 25, 2014." Doc. no. 26 at 2.  Nationstar also challenges the FDCPA claim on the merits.

## 1.  Statute of Limitations

Under the FDCPA, suit must be filed "within one year from the date on which the violation occurs."  § 1692k(d); McCarthy v. WPB Partners, LLC, No. 16-cv-081-LM, 2016 WL 4014581, at *7 (D.N.H. July 26, 2016).  An FDCPA claim arising from collection letters may accrue on the date when the letter was mailed or

8

received. Simard v. LVNV Funding, LLC, No. 10-11009-NMG, 2011 WL 4543956, at *3-4 (D. Mass. Sept. 9, 2011).

Farrin makes no argument of any kind to avoid the one-year limitation period. Because his complaint was filed on March 25, 2015, communications before March 25, 2014, cannot be considered for purposes of the FDCPA claim.[6]

## 2. Violation of the FDCPA

To succeed on a claim under the FDCPA, a plaintiff must show that "'(1) [he] was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA.'" Jones v. Experian Information Solutions, No. 14-10218-GAO, 2016 WL 3945094, at *3 (D. Mass. July 19, 2016) (quoting Rhodes v. Ocwen Loan

---

[6] Farrin does not contend in his objection or surreply that Nationstar's actions constitute a course of conduct. See Devlin v. Law Offices of Howard Lee Schiff, P.C., No. 11-11902-JGD, 2012 WL 4469139, at *6 (D. Mass. Sept. 25, 2012) ("District courts are not of a single view as to how the one-year statute of limitations for the FDCPA applies to a course of conduct, some of which occurred within the limitations period and some of which preceded it." (internal quotation marks omitted)). Because Farrin does not advance that argument in his objection or surreply, the court does not address it here. See Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) (The First Circuit has "emphasized that judges are not obligated to do a party's work for him, 'searching sua sponte for issues that may be lurking in the penumbra of the motion papers.'" (quoting United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992))).

9

Servicing, LLC, 44 F. Supp. 3d 137, 141 (D. Mass. 2014)).

Farrin asserts that Nationstar violated the FDCPA by asserting in communications with him that he owed a debt based on his mortgage loan that had been discharged in bankruptcy.[7]

Nationstar argues that the disclaimers included in its correspondence with Farrin preclude his FDCPA claim because the disclaimers notified Farrin that Nationstar was not collecting a debt.[8] The disclaimers on which Nationstar relies appear in different forms.

For example, Nationstar sent Farrin monthly "Mortgage Loan Statements" that listed the address of the mortgaged property, provided an "Explanation of Amounts Payable" with an "Amount Due" by a certain date, and provided the interest rate and the principal balance. Under a heading of "Important Messages," was the following:

> This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a, [sic] or demand for payment from, any individual protected by the United States Bankruptcy Code. If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for

---

[7] Although Farrin does not cite the provision of the FDCPA that Nationstar violated, he appears to refer to § 1692e(2)(A). See, e.g., Lannan v. Levy & White, --- F. Supp. 3d ---, 2016 WL 2937455, at *7 (D. Mass. May 11, 2016).

[8] To the extent Nationstar is attempting to argue that it did not violate the FDCPA because it was required to send certain communications to Farrin under the SCRA, its theory is far from clear.

informational purposes and is not an attempt to collect a debt.  Please note, however Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation.

The statement provided a number to call to discontinue the statements.  At the bottom of the statement, however, is a payment slip that directs Farrin to detach and "Return with your Payment."  It states the total amount due and provides space to indicate the payment to be made.

Nationstar also sent "point of contact" letters to Farrin to assist him "with the various workout options that may be available" and to assist with questions about his "loan status."  The letters listed a person, address, and telephone number.  The following statement appears at the end of each letter:

If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and not an attempt to collect a debt.  Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.

Additionally, Nationstar sent Farrin five notices for foreclosure prevention that began by directing Farrin to "Act Now" to contact Nationstar about foreclosure prevention options.  The notices list two options – to stay in the home and make mortgage payments or to leave the home.  At that point, however, Farrin had already left the home and had offered a deed in lieu of foreclosure.  The notices provide a deadline, telling Farrin

11

he "must respond" by the date provided.  At the bottom of each notice in smaller print is the following statement:

> This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if this debt is involved in a bankruptcy or has been discharged in a bankruptcy proceeding, this communication is not an attempt to collect a debt against you and any information obtained or given will be for informational purposes only.

Nationstar contends that the disclaimers in its communications effectively notified Farrin that the communications were not for debt collection.  In support, Nationstar argues that the validity of the disclaimers was upheld in LaCourse v. Ocwen Loan Servicing, LLC, No. 14-cv-013-LM, 2015 WL 1565250, at *9-10 (D.N.H. Apr. 7, 2015).

In LaCourse, however, Ocwen sent only two letters after receiving notice that the plaintiffs were represented by counsel and those letters were in response to the plaintiffs' requests for information from Ocwen.  Id. at *10.  In that context, the disclaimer in each letter was sufficient to avoid being a communication in connection with the collection of a debt in violation of the FDCPA.  Id.

Here, Farrin represents and Nationstar does not dispute that it sent many letters and notices and made many calls to Farrin about the amount of the outstanding loan.  Nationstar has not shown that the number of communications after March 24,

12

2014, is significantly reduced compared to the total.[9] Nationstar does not provide any facts to show that Farrin requested those communications from Nationstar. In fact, the record shows that Farrin demanded that Nationstar stop contacting him.

Under these circumstances, the effectiveness of Nationstar's disclaimers cannot be determined as a matter of law. Other courts have concluded that statements and notices about loans and amounts due, despite similar disclaimers, raise jury questions as to whether the communications were in "connection with the collection of any debt" under the FDCPA.[10] See, e.g., Prindle v. Carrington Mortg. Servs., LLC, No. 3:13-cv-1349-J-34PDB, 2016 WL 4369424, at *15 (M.D. Fl. Aug. 16,

---

[9] Nationstar admits that it sent monthly statements and several other types of correspondence until June 2015. Although the record does not contain a precise factual showing as to numbers, it appears that there were a significant number of communications.

[10] Nationstar argues that courts which have found similar disclaimers insufficient were applying the "least sophisticated consumer" standard rather than the "unsophisticated consumer" standard used by the First Circuit. Nationstar, however, has not sufficiently explained the material differences between the standards, and courts in the First Circuit have found little or no distinction between the two standards. See In re Murray, 552 B.R. 1, 4-5 (Bankr. D. Mass 2016); Laccinole v. Assad, No. 14-404 S, 2016 WL 868511, at *5 (D.R.I. Mar. 7, 2016); Forcier v. Creditors Specialty Serv., Inc., No. 13-cv-444-LM, 2014 WL 6473043, at *5 (D.N.H. Nov. 17, 2014). The Supreme Court has not addressed the distinction, if one exists. See Sheriff v. Gillie, 136 S. Ct. 1594, 1602 n.6 (2016).

13

2016); Green v. Specialized Loan Servicing, LLC, No. 15-cv-513-jdp, 2016 WL 3963255, at *4-5 (W.D. Wisc. July 21, 2016); Radney v. Bayview Loan Servicing, LLC, No. 15-cv-9380, 2016 WL 3551677, at *3-4 (N.D. Ill. June 30, 2016). Therefore, Nationstar has not shown that it is entitled to summary judgment on the FDCPA claim, except as to communications that occurred prior to March 25, 2014, which are excluded from the claim.

### C. RSA 358-C

Under RSA 358-C, "[n]o debt collector shall collect or attempt to collect a debt in an unfair, deceptive or unreasonable manner as defined in this chapter." RSA 358-C:2. Farrin contends that Nationstar violated RSA 358-C:2 by claiming that Farrin still owed the discharged debt and might be liable for additional fees. See RSA 358-C:3, VII & VIII. In support of summary judgment, Nationstar argues that because of the disclaimers in its communications with Farrin, those communications did not contain any false representations about the debt or fees.

Because RSA 358-C is the state analog of the FDCPA and New Hampshire has little case law addressing the statute, FDCPA cases are used to analyze claims under RSA 358-C. Dionne v. Fed. Nat'l Mortg. Ass'n, No. 15-cv-056-LM, 2016 WL 3264344, at *9 (D.N.H. June 14, 2016). In asserting that it is entitled to

14

summary judgment on Farrin's UDUCPA claim, Nationstar relies on the same arguments it made in regard to its FDCPA claim. See doc. no. 20-1 at 24. For the reasons stated above, those arguments are unavailing.

Nationstar also relies on Pruden v. CitiMortgage, Inc., No. 12-cv-452-LM, 2014 WL 2142155 (D.N.H. May 23, 2014), in which the debtor and lender entered into a forbearance agreement. The agreement provided that the debtor would continue to receive collection letters, which could be disregarded as long as the forbearance payments were current. Id. at *14. The court concluded that the agreement provided sufficient warning of the collection letters to preclude liability under RSA 358-C:3, VII.

Unlike the parties in Pruden, Farrin and Nationstar did not enter a forbearance agreement. Instead, Nationstar relies on the disclaimers in its communications with Farrin to avoid the misrepresentation charges. Given the obvious differences between a forbearance agreement and the various disclaimers in Nationstar's communications, Pruden does not support Nationstar's position.

In this case, the number of calls, notices, and letters and the content of those communications show that a material factual dispute exists as to whether Nationstar's communications were misrepresentations "of the character, extent or amount of the debt" or representations of increases in the debt due to fees in

15

violation of RSA 358-C:3, VII or VIII.  Therefore, Nationstar is not entitled to summary judgment on the RSA 358-C claim.

D.  FCRA

Nationstar contends that Farrin cannot show a violation of FCRA, and, even if Farrin could show a violation, he cannot show that any such violation was willful.[11]  In support, Nationstar argues that it had a permissible purpose to obtain Farrin's credit report under FCRA.

Under FCRA,

> [a] person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

§ 1681b(f).  A permissible purpose to obtain a report includes when the person "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished . . . [for] review or collection of an account of, the consumer."  § 1681b(a)(3)(A).  The court must determine whether, viewing the facts in the light most favorable to Farrin, there is a material factual dispute both as

---

[11] Farrin alleges that Nationstar willfully violated FCRA in violation of 15 U.S.C. § 1681n.  He does not allege that Nationstar negligently violated FCRA under 15 U.S.C. § 1681o.

to whether Nationstar had a permissible purpose to obtain Farrin's credit report under FCRA and, if not, whether Nationstar willfully violated FCRA.  See, e.g., Murray v. Indymac Bank, F.S.B., No. 04 C 7669, 2005 WL 1866043, at *3 (N.D. Ill. June 13, 2005) (noting that a court should analyze separately whether a defendant violated FCRA and whether there is sufficient evidence of negligence or willfulness).

1.   Violation of FCRA

Nationstar argues that it had a permissible purpose to obtain Farrin's credit report for several reasons, including that it properly obtained Farrin's credit information as part of its review "of an account of . . . the consumer" as allowed under § 1681b(a)(3)(A).  Farrin argues that Nationstar did not have a permissible purpose to obtain his credit report under that section of FCRA.

Whether a defendant may permissibly obtain a consumer's credit report under § 1681b(a)(3)(A) after a bankruptcy discharge depends on the specific circumstances of each case. Compare Radney, 2016 WL 3551677, at *4 (holding that defendant entitled to access plaintiff's credit report after bankruptcy discharge where plaintiff had not yet surrendered possession of the property and foreclosure proceedings were still ongoing at the time of the credit pull) with Barton v. Ocwen Loan

17

Servicing, LLC, Civ. No. 12-162 (MJD/JJG), 2013 WL 5781324, at *4-5 (D. Minn. Oct. 25, 2013) (holding that defendant not entitled to access plaintiff's credit report where defendant knew of discharge and had been given the name of borrower's bankruptcy attorney to verify the discharge).  Even if Nationstar accessed Farrin's credit report for an impermissible purpose, the court must still determine whether a genuine issue of material fact exists regarding whether Nationstar willfully violated FCRA.  Because the record evidence shows that Nationstar did not willfully violate FCRA, the court assumes without deciding that a material factual dispute exists as to whether Nationstar obtained Farrin's credit report for an impermissible purpose.[12]

## 2. Willful Violation

"Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for damages, costs, and attorneys' fees as provided in the statute.  § 1681n(a); Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1545 (2016).  Willful

---

[12] Nationstar also asserts that it had a right to obtain Farrin's credit report under §§ 1681b(a)(2) and 1681b(a)(3)(F). Because the parties focus their arguments as to willfulness on whether Nationstar had the right to obtain Farrin's credit report for account review purposes under § 1681b(a)(3)(A), the court focuses its willfulness analysis on that section of FCRA.

violations include both intentional acts and those "taken in 'reckless disregard' of the statute." Fryer v. A.S.A.P. Fire & Safety Corp., Inc., 658 F.3d 85, 91 (1st Cir. 2011) (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007)). Recklessness is an objective standard, and a company acts in reckless disregard of the statute if "the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69. Even though a company's conduct may constitute a violation of FCRA, it cannot be a willful violation unless the conduct is "objectively unreasonable." Id. at 70. "So long as the conduct adopted by the company 'could reasonably have found support in the courts,' no willful violation exists and the reporting agency is entitled to summary judgment as a matter of law." Sheldon v. Experian Info. Solutions, Inc., No. 08-5193, 2010 WL 3768362, at *4 (E.D. Pa. Sept. 28, 2010) (quoting Safeco, 551 U.S. at 70 n.20).

Nationstar contends that Farrin's account remained open for purposes of § 1681b(a)(3)(A), despite his discharge and surrender of the property, because Farrin had an ongoing relationship with Nationstar. In support, Nationstar states that Farrin remained the title holder of the property, had offered a deed in lieu of foreclosure, had not waived his rights

19

under the SCRA, and refused to verify identifying information. Nationstar also states that it needed the credit report for "skip tracing" to verify Farrin's address and to determine his military status for purposes of the SCRA. Nationstar contends that, therefore, it was permitted to do an account review under § 1681b(a)(3)(A) and obtained Farrin's credit report for a permissible purpose.

Nationstar contends that even if it was incorrect and it did not have a permissible purpose to obtain Farrin's credit report for an account review under § 1681b(a)(3)(A), its interpretation of the statute was not objectively unreasonable and, therefore, it did not recklessly disregard FCRA when it obtained Farrin's credit report.[13] In support, Nationstar asserts that its interpretation of the statute comports with the interpretations by the courts in Saumweber v. Green Tree Servicing, LLC, No. 13-cv-03628 (SRN/SER), 2015 WL 2381131 (D. Minn. May 19, 2015), Germain v. Bank of Am., N.A., No. 13-cv-676-bbc, 2014 WL 5802018 (W.D. Wisc. Nov. 7, 2014), and Levine v. World Fin. Network Nat'l Bank, 554 F.3d 1314 (11th Cir. 2009); that no circuit court has found to the contrary; and that

---

[13] Farrin contends that Nationstar willfully violated FCRA because it acted in reckless disregard of the statute, not because it intentionally violated the statute.

20

the Federal Trade Commission has not issued guidance to support Farrin's position.

In response, Farrin argues that Nationstar's interpretation of § 1681b(a)(3)(A) was objectively unreasonable. Farrin argues that he did not have a "credit relationship" with Nationstar at the time it obtained his credit report, which is a necessary prerequisite for Nationstar to review Farrin's account. Farrin also argues that Saumweber and Germain do not support Nationstar's interpretation and that the law has developed since Levine.

### a. Credit Transaction

Farrin notes that § 1681b(a)(3)(A) provides that a person may obtain a consumer report only when he does so "in connection with a credit transaction involving the consumer." He argues that once his mortgage was discharged in bankruptcy, the parties no longer had a credit relationship and, therefore, Nationstar's act of obtaining his credit report was not done in connection with a credit transaction involving a consumer.

In support, Farrin cites Pintos v. Pacific Creditors Ass'n, 605 F.3d 665, 674 (9th Cir. 2010). In Pintos, the Ninth Circuit addressed whether the defendant had obtained the plaintiff's credit report as a result of "a credit transaction involving the consumer" under § 1681b(a)(3)(A). The court noted that the

"credit transaction" at issue arose from a towing company that had towed the plaintiff's car, sold it without her permission, and then authorized the defendant to obtain the plaintiff's credit report to collect on a deficiency claim arising out of charges for towing and impounding the plaintiff's car. The court held that the defendant did not have a permissible purpose to obtain the plaintiff's credit report under § 1681b(a)(3)(A) because the credit transaction at issue did not involve the plaintiff. The court reasoned that the claim against the plaintiff "did not result from a transaction initiated by" the plaintiff and, therefore, did not "involve" her for purposes of FCRA. Id. at 676.

Here, however, Farrin voluntarily entered into the credit transaction at issue, i.e., his mortgage loan. The factual circumstances in Pintos are "far different" from the situation in which a plaintiff "voluntarily entered into mortgage loans and then failed to make payments." Germain, 2014 WL 5802018, at *5 (distinguishing Pintos). To the extent Farrin argues that his bankruptcy discharge terminated the parties' credit relationship, he offers no case law to support that assertion. Indeed, the only court that has directly confronted that question decided it in favor of Nationstar's position here, and specifically held that a discharge does not, by itself, end the

22

credit relationship between a borrower and a lender.  Id. at
*5-6.

Therefore, Farrin's argument concerning the lack of a
credit relationship between the parties is without merit.  Even
if it had merit, however, Nationstar's belief that it still had
a credit relationship with Farrin after his bankruptcy
discharge, particularly in light of Germain, cannot be described
as objectively unreasonable.

### b.  Case Law

Nationstar cites two recent district court cases that hold
that a defendant is entitled to access the plaintiff's credit
report after a bankruptcy discharge.  See Saumweber, 2015 WL
2381131, at *3-5; Germain, 2014 WL 5802018, at *5-8.  It also
relies on Levine as supporting a loan servicer's right to obtain
a borrower's credit report even after the borrower's account was
closed.  Nationstar argues that in light of this case law and
the lack of authority to the contrary, its interpretation of
§ 1681b(a)(3)(A) was not objectively unreasonable and,
therefore, it did not recklessly disregard FCRA when it obtained
Farrin's credit report.  Farrin argues that it is objectively
unreasonable to rely on Levine in light of subsequent district
court opinions, and that Saumweber and Germain are
distinguishable.

23

In Levine, the Eleventh Circuit upheld a finding of no willfulness where the defendant's act of selling the plaintiff's credit report occurred after the plaintiff had paid his balance and closed his account. The plaintiff argued that the defendant committed a willful violation of FCRA because there could be no permissible purpose to pull his credit report where his account was closed and there was no active account for the defendant to review. The court found the relevant language "ambiguous" on whether the statute "contains an absolute prohibition against the sale of credit reports to former creditors whose accounts are closed and paid in full." 554 F.3d at 1318 (internal citations and quotation marks omitted). The court further noted the lack of circuit authority or authoritative guidance to the contrary. See id.

The Eleventh Circuit decided Levine in 2009, and the Circuit has issued no decision since Levine calling its holding into question. Thus, Levine is still good law and Nationstar's reliance on it as support for a company's right to pull a consumer's credit report for purposes of reviewing both open and closed accounts is not objectively unreasonable.

There are two problems with Farrin's argument that the law has developed to the point where it would have been unreasonable for Nationstar to rely on Levine. First, as discussed, Levine is still good law. Second, Nationstar relies on more than just

24

Levine.  Nationstar relies on a line of recent district court cases in the context of a post-discharge credit pull which stand for the proposition that a discharge, by itself, is not enough to render a company's post-discharge credit pull a violation of FCRA.  See, e.g., Saumweber, 2015 WL 2381131, at *3-5 (holding that post-discharge credit pull not FCRA violation where plaintiff remained in possession of home and continued to make payments); Germain, 2014 WL 5802018, at *5-8 (holding that post-discharge credit pull not FCRA violation where plaintiff remained in property and offered a deed in lieu of foreclosure).

Farrin points to district court cases in which the courts held that defendants were not entitled to access plaintiff's credit reports post-discharge under FCRA.  See Barton, 2013 WL 5781324, at *4-5; Godby v. Wells Fargo Bank, N.A., 599 F. Supp. 2d 934, 942 (S.D. Ohio 2008) (holding that defendant not entitled to access plaintiff's credit report after discharge where plaintiff's account was closed, and although plaintiff's name was still on the title, plaintiff had surrendered her rights to the property).  Although these cases support Farrin's argument, they underscore that courts look to the circumstances of each case to determine whether a defendant is entitled to access a plaintiff's credit report after a bankruptcy discharge.

Here, it is undisputed that Farrin still held title to the property and Nationstar remained the servicer.  While a jury may

25

conclude that Nationstar's post-discharge credit pull constitutes a FCRA violation, Nationstar's reliance on <u>Levine</u> and the post-discharge line of district court cases to conclude otherwise cannot be described as "objectively unreasonable."

The Supreme Court has made clear that where there is support in the case law for more than one reasonable interpretation, a defendant cannot be liable for a willful violation under FCRA for adopting one of those interpretations:

> Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator. Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been.

Safeco, 551 U.S. at 70 n.20

For these reasons, Nationstar is not liable for a willful violation of FCRA and is entitled to summary judgment on Count II.

## Conclusion

For the foregoing reasons, defendant's motion for summary judgment (document no. 20) is granted as to Count II and as to the FDCPA claim in Count III to the extent it is based on

26

actions or conduct that occurred before March 25, 2014, and is otherwise denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 28, 2016

cc: Scott C. Borison, Esq.
    D. Kyle Deak, Esq.
    Peter A. Holland, Esq.
    John C. Lynch, Esq.
    Thomas J. Pappas, Esq.
    Roger B. Phillips, Esq.
    Kenneth Stout, Esq.